The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Lawrence Anderson Fonseca, appeal number 19-1791. Attorney Olmo Rodriguez, please introduce yourself for the record and proceed with your argument. Good morning to the Honorable Court. Jose R. Olmo Rodriguez representing Appellant Lawrence Anderson Fonseca. You may begin. Thank you, Your Honor. Could I please begin by asking to reserve two minutes for rebuttal, Your Honor? You may. Thank you. Okay. The main reason why this Honorable Court should grant this appeal is because there is evidence to support the only viable defense theory of Mr. Fonseca that did not exist at the time that he made his change of plea. When he made his change of plea, even though there was a police report that made reference to a statement that could support his defense theory, it was not evidence that he could have used at trial. Now, after he pled guilty, the person who made that statement testified on the road in the sentencing hearing of another co-defendant. And it is there and then that he provides the statement that Fonseca can now use to his defense. Before that, he only had his word about his defense theory. Now, more than his self-serving statement, as the prosecution may argue, he has the benefit of this statement, which he can use to bring the witness to trial. And if the witness denied it, he can confront it with the previous statement. Before, he could have brought the witness to trial, but he had no statement to confront him with, as the statement was contained in a police report prepared by a policeman. Counsel, are you referring to Mr. Edwards, the statement that he made? Is that what you're talking about? Yes, Your Honor. Mr. Edwards' statement, which is referenced during the police report. Right. Doesn't the record suggest that Mr. – I mean, I gather you are arguing that he made a statement that could be viewed as exculpatory, but Mr. Edwards also has made statements that would inculpate your client in this importation scheme. And it seems to me the judge was entitled to look at, in evaluating this claim of innocence, was entitled to look at the full range of Mr. Edwards' statements, and I gather concluded that it really wasn't going to do very much to support a claim of innocence. Why wasn't the judge entitled to do that? Well, Your Honor, Edwards' statement was made at the sentencing hearing. What we had before – I'm sorry I misled the court – it was Gomes' statement about what Edwards thought. The police report had Gomes' statement about Edwards' statement.  It's two different co-defendants. Edwards' statement did not exist before. We only had reference to that by Gomes to a police officer telling him that Edwards thought that they were being ripped off. But that's not Edwards' statement. That's Gomes' statement repeating Edwards' statement. So now we have Edwards' statement, which didn't exist before. And even though it may not be a bombshell, it supports his only viable theory of defense. Is there anything in the record that shows that your client or his lawyer on his behalf attempted to contact Edwards and find out what his position would be after reading the police report? I haven't seen that, Your Honor. No, there is nothing. Not that I have seen. No, there is nothing. So we're left with a situation where the defendant is aware, sees a document that indicates that Edwards may be willing to make a statement that is exculpatory, doesn't follow up on it, pleads guilty, and now wants to vacate his guilty plea because Edwards actually followed up and did what Gomes had pretty much predicted he would do in the police report. Is that the situation? That's the situation, but evidentially, if I may, Your Honor. Go ahead. In practice, in real terms, what it meant before, you had some information, but you could not use that at trial because you couldn't take Edwards and hold him to a statement because Edwards had not given any statement. Now you have a statement that you can make him admit at trial, even if he doesn't want to say the same thing at trial. Counsel, the claim of innocence is certainly an important part of the analysis of whether the defendant should be allowed to withdraw his plea, but it's only one consideration. It's important, yes, but there's also the issue of how long after the plea was entered, how long it takes for him to ask to withdraw, prejudice to the government, whether the plea was known involuntary. And so the court looks at the totality of those circumstances, says there's prejudice, says it took him too long to do it, the plea was known involuntary. So why couldn't the court put all that together along with this sort of mixed picture on the claim of innocence and say, well, in my view, there's not a fair and just reason to allow for withdrawal. What's wrong with that analysis? Well, we believe the dishonorable courts has stated that this should be a liberal approach. And under that liberal approach, we believe that he as soon as he found he was not on bail, he could not go to the sentencing hearing. In fact, he was lucky to have a new lawyer who was not his lawyer at the time that he made his change of plea, who then requested a transcript and found out about the new statement. So he did as soon as he could ask to withdraw his plea. In addition, he has a plausible explanation for why he pled guilty. To begin with, his wife was accused with him. I mean, she was not involved in the scamming or stuff. It was basically a casualty of this, and he wanted to take her out of this. He only had his word back then to support his theory. It's very different for you as a defendant to sit down there and testify on your behalf without having some support for what you're saying. So he actually claimed innocent as soon as he could withdraw his change of plea with plausible reasons, with a good showing to the honorable court. Any further questions? Judge, that's time. OK. Dan, I'm getting some scratching feedback in the background. It just went away. It's going in and out. I'm not sure where it's coming from. I hear that too, Judge. It may be one of the speakers that one of the attorneys has. OK. OK. Thank you very much. Thank you. The government. Thank you. Attorney, Attorney Olmo Rodriguez, please mute your audio and video at this time. And Attorney Klumper, we're going to hear from you. You can go ahead and introduce yourself on the record to begin. Good morning, Your Honor. Thomas Klumper on behalf of the United States. In this case, the court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea. In response to Farnsworth's claim that it's newly discovered evidence, in this case, actually, he was well aware already of Edward's statements well before he even pled guilty. If you look at Docket Entry 119, which was filed in response to a motion to dismiss for lack of summary, for lack of jurisdiction, he attaches, the defense counsel actually attaches, documents and supports the government's contention that this was already well known. It's not newly discovered evidence or anything. If you look at it, and that the defendant could have used it or knew about it. If I may point to the direction, the court to its direction, what happened was, as part of the attachments that were provided, there were call-offs. There was a summary of the call-offs that were given, that were obtained. The government had a Title III where they obtained phone conversations between Edward and Gump, where they were discussing what was going on and what statements that were made to this effect, if you look at page, actually, of the appendix, page 37. We have a call where Gump and Edward are talking, and what did they state? Where Gump is saying he hasn't heard from Sinbad, and that Sinbad is full of blank. So, they're already, you can show the frustration. Two, there's another call, 165. This is Edward saying he wants to meet with the co-defendant in Miami on the way he's going back from Tortola. And what did he say? He knows, he goes because he knows what the F they're doing, and Edward, he's, Edward is tired of F-ing around with Sinbad. So, then we have a call, another call, 199, which is synthesized. And again, Edward tells Gump that Sinbad is full of, excuse the explicit chin, and he doesn't have anything, that Sinbad has, he's been waiting for the parts, meaning the drug, and that he's done dealing with Sinbad. So, we show all along that already there is no material difference between what he had stated in the grand jury, or excuse me, he stated at sentencing, as what was provided in these phone conversations before he even pled guilty. And this was provided in discovery, and defense counsel provided it, actually, as part of the motion to dismiss. And in fact, it was the defendant himself had pushed to have this motion to dismiss. And he admitted at the change of plea hearing, he had gone through discovery with his counsel. So, in this case, there is no newly discovered evidence as claimed by Fonseca in this case. And as significant as the court has indicated, one of the most important factors is whether in a change of plea, when the defendant pleads guilty, was it knowing, it's one of the most significant factors, was it knowing until it's involuntary. And here, he did, the court, clearly, the magistrate, went through the whole process, he admitted his guilt, admitted to the factual statement, and everything else, and actually, if I might also point out for the record, that even after he has filed all these motions to dismiss, for the amended PSR, the defendant, if I may quote, if you look at docket 601, the amended PSR, he accepts responsibility on page six. Was he state to the probation officer at the time defendant accepted the responsibility for accepting $45,000 from a COA defendant as a down payment to get him an uncertain amount of kilograms of cocaine. So, he admits to the probation officer, even after all these frivolous motions to dismiss, that he admitted to the probation officer that he accepted responsibility for accepting $45,000 as a down payment for the purchase of kilograms of cocaine. Our counsel, the magistrate judge did recommend that he be allowed to withdraw his plea. In what way did the, what is the most significant difference between the way in which the magistrate judge analyzed this motion and the district court? The district court didn't really even acknowledge in any specific way the decision of the magistrate judge. It's a somewhat unusual situation where we have that kind of recommendation from the magistrate judge. Of course, the district court has to make an independent decision. It clearly did. But what, what, but it did accept. How did their analyses differ? Well, I think it did look at it because it looked at part, accepted a part, and denied in part the magistrate's order. And if you look at it, it followed what the government had argued. First of all, the magistrate was incorrect in several factual assertions in there. First of all, what it stated was that the defendant had all along, since 2015, was disillusioned with his counsel, asking for withdrawal of his guilty plea and everything else. That was incorrect because he hadn't pled guilty until 2016, August. August, remaining four minutes. Thank you. And that if you look at it, there already is, what happened was that we dealt with his second counsel, not the one he had pled guilty with. And in that case, the defendant wasn't claiming he was innocent. And that was a strategy decision with his second counsel. Instead, that was, there was a disagreement whether he should file, one, the motion to dismiss for jurisdiction, those two claims. And there was a disagreement between Juan Matos de Juan, which was the second counsel, as to whether he or Fonseca wanted to file sworn statements on behalf of Peter Lev and the wife, defendant's wife, saying that, yes, these monies were coming, this money that was transferred or wired and everything else was going to me. And defense counsel did not want, his previous counsel did not want that to happen. So that's one distinction the court kind of relied on the magistrate. And the second thing was that the judge, here, actually, the magistrate agreed that it wasn't exculpatory or newly discovered evidence. So the judge didn't have to distinguish that because it actually agreed it wasn't. So then also the district court determined the difference was prejudice. He found the judge made, the magistrate judge determined that there would be no prejudice of government in this case because the case was within five years of the case being indicted or case ongoing. And the court disagreed. If you look at it, it found prejudice in this case because we argue one of the main witnesses, Peter Lev, was after his change of plea and sentencing. He was sentenced August 10th. The defendant pleaded guilty on August 1st. He was deported. Peter Lev was deported. And he was one of the primary witnesses that was receiving some of the funding that was for the drug deal. Mr. Compa, how many magistrate judges' reports and recommendations are there on motions to withdraw? There were six motions to withdraw filed in this case. Yes. Were all of those referred to magistrate judges? No, not all of them. Actually, it was the first three were not to the magistrate. What the judge had referred to the magistrate was the ineffective assistance of counsel claim against Frank Reboil. But there was only one time, and it was in relation to the fourth motion in this case. Is that the only R&R that we're dealing with? Yes, that is correct, Your Honor. The fifth and sixth also weren't referred to magistrate judges? No, because he was asking for reconsideration in this case. And the court found it was repetitive, the same arguments. If you even look at the sequence of events, I mean, if you look actually what was testified by the Edwards in the safety valve, he talked so long about gum and not believing him all the way. And in the final statement, he was asked about Fonseca, too. And he said he did not know if he was telling the truth or not. I mean, so I think if you look at it, it was clearly distinguishable and that the court did not abuse his discretion in denying the motion to withdraw. I mean, this defendant has raised many different claims along the way. Originally initiated starting confusion and ineffectiveness. Then he changed his theory to he did it because of his wife, which is not true because he didn't have a package deal or anything with the government. Then he changed it to also he wanted a lower sentence. Now he goes along that he's changed his theory multiple times. So his credibility was shot. Any further questions? Then we rest on the briefs. Thank you. Thank you, Attorney Klumper. At this time, we'd ask you to mute your audio and your video. Attorney Olmos Rodriguez, you can please reintroduce yourself on the record for your two minute rebuttal. I will not make use of it if of the rebuttal. Thank you. Thank you. Thank you, Attorney Olmos. This concludes arguments in this case. Attorney Olmos Rodriguez and Attorney Klumper, you can disconnect from the hearing at this time.